# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**FRANK CHAPMAN,**

    **Plaintiff,**

**v.**                                                                                     **Case No. 8:10-cv-1202-T-30AEP**

**GRABLE PLUMBING COMPANY, INC.,**

    **Defendant.**

_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 28) and Plaintiff's Response in opposition (Dkt. 49). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.

## **BACKGROUND**[1]

Plaintiff Frank Chapman was employed at Defendant Grable Plumbing Company, Inc. as a service technician/plumber in March, 2007. He remained employed, other than a brief hiatus, until April 5, 2010, when his employment was terminated.[2]

---

[1] Any disputed facts are viewed in a light most favorable to Plaintiff, the non-movant.

[2] Chapman's termination is not relevant to the Court's Order because his response indicates that he withdraws his retaliatory termination claim in light of Defendant's summary judgment motion.

Grable is a small residential and commercial plumbing business. The majority of its business is to customers in and around Tampa Bay. It currently has nine employees, including its owner, Bill Grable.

Grable's plumbers drive directly from their home in a company-provided service van to their first service call. Each plumber takes his service van to his residence at the end of the workday. A dispatcher arrives at Grable's office around 7:30 a.m., prioritizes any service calls received, and then calls or texts the plumbers to assign the jobs. Each plumber is provided a cell phone. According to Chapman, in the ordinary course of business he would probably run four or five calls a day. He would account for his time on a daily driver's report ("DDR"), which he turned in to Grable on Wednesdays. The DDR would reflect the customer's name, address, type of call, what time he arrived at the address, what time he left, how he charged the customer, and how the customer paid for the work performed.

Chapman was paid by Grable on an hourly basis. According to Chapman and another former plumber, Andrew Therien, they were expected to be in their service van each morning at 7:30 a.m., ready to receive word from the dispatcher directing them where to go on their first call of the day. Defendant vehemently disputes that Chapman, or any other plumber, was required to wait in his service van for the first call.

It is undisputed that Grable does not pay its plumbers to drive from their home to the first job site. The plumbers' pay begins when they arrive at the first job site. And their paid time ends when they leave the last job site of the day. Grable does not pay its plumbers for the time spent driving from their last job site to their home.

Each plumber works "on-call" shifts. One plumber is on-call at the end of the regular workday until the regular shifts begin the following morning. This was typically from 4:30 p.m. until 7:30 a.m., the following morning. Additionally, one plumber is on-call during an entire weekend about one time per month.

When on-call, a plumber needs to be within fifteen minutes of his service van. If a plumber is unable to respond for some reason, he has the ability to trade his on-call time with another plumber. It is undisputed that Grable only paid the plumbers for the time they spent responding to and working on a call. In other words, Grable did not compensate the plumbers for the time they spent on-call when they were not working on a customer service call.

According to Chapman, when he was on-call, he was pretty much restricted from leaving his home or going anywhere to do other personal things because he always had to be within fifteen minutes of his service van. According to Chapman, he was prohibited from using his service van for personal reasons, except for one occasion. Defendant disputes that the on-call policy prevented plumbers from leaving their homes. Also, according to Defendant, plumbers could use their service vans for personal reasons, as long as they received approval ahead of time.

Subsequent to Chapman's termination, he filed the instant action claiming he should have been compensated for all time periods he spent on-call and other wait time; for time spent driving from his home to the first job site; for travel time between job sites; and for time spent driving from his last job site to his home.

This case is at issue upon Defendant's motion for summary judgment. Defendant contends that it is entitled to judgment, as a matter of law, on the entirety of Chapman's claims.

## DISCUSSION

### I.     Summary Judgment Standard

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.    Defendant's Motion for Summary Judgment**

    **A.    <u>On-Call Time</u>**

Chapman claims that he should have been compensated for all the time he spent on-call, including the time he spent waiting to receive a call. When employees are engaged to wait for the employer's call to work, the time may be compensable. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944). The issue depends on whether the employee may use the time for personal reasons. *Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992). This question has been formulated as whether "the time is spent predominately for the employer's benefit or for the employee's." *Armour & Co. v. Wantock,* 323 U.S. 126,

133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). And this question is "dependent upon all the circumstances of the case." *Skidmore,* 323 U.S. at 136.

In *Birdwell*, the Eleventh Circuit reviewed holdings in a number of cases involving the issue of whether on-call waiting time was compensable. After a review of those cases, the Eleventh Circuit determined that detectives who were on-call for a week were not entitled to compensation under the FLSA. *Id.* at 810. The detectives were on-call twenty-four hours a day for seven days in a row. *Id.* at 808. They did not have to stay at the police station, but they were required to carry a beeper with them if they left home. *Id.* They were not allowed to drink alcohol, leave town, go on vacation, or participate in outdoor activities such as hunting or fishing. *Id.* If they did go anywhere with friends or family, they had to take their own vehicle in case they were called in to work suddenly. *Id.* Despite these restrictions, the Eleventh Circuit found that the detectives' on-call time was used predominantly for their own benefit, and that no reasonable jury could find otherwise. *Id.* at 810. The Court concluded that "an employee's free time must be *severely restricted* for off-time to be construed as work time for purposes of the FLSA." *Id.* at 810 (emphasis added).

In *Bright v. Houston Northwest Medical Center,* 888 F.2d 1059 (5th Cir.1989), one of the cases discussed in *Birdwell*, the plaintiff was on call for eleven months straight. During this time he was required to remain sober, always be reachable by beeper, and arrive at work within 20 minutes of being called. *Birdwell,* 970 F.2d at 808-09. The court in *Bright* "acknowledged that Bright's job was undesirable and perhaps oppressive, [but] held that this on-call time was not working time under the FLSA." *Id.* at 809.

In *Brekke v. City of Blackduck*, 984 F. Supp. 1209 (D. Minn. 1997), the court granted summary judgment to the defendant because "the general rule is that, although every on-call policy creates some imposition on the life of the employee subject to the terms thereof, such time will nonetheless rarely be compensable." *Id.* at 1220-21. In *Brekke*, the plaintiffs/ambulance drivers were required to wear paging devices, and remain within a certain geographic proximity of the Ambulance Service Garage when they were on-call. *See also Berry v. County of Sonoma*, 30 F.3d 1174 (9th Cir. 1994) (coroners were not entitled to compensation for on-call time despite the fact that they were on call twenty-four hours a day, were required to respond to pages within fifteen minutes, and received three to six calls per day).

The same result was reached in *Lurvey v. Metropolitan Dade County*, 870 F. Supp. 1570 (S.D. Fla. 1994) and *Arrington v. City of Macon*, 986 F. Supp. 1474 (M.D. Ga. 1997). In *Lurvey*, the court granted summary judgment against bomb squad technicians seeking compensation for on-call time. The terms of their on-call time required them to remain at home with their equipment and van nearby to insure a quick response if they received a call from the dispatcher. The only restriction on their at-home activities was that they could not consume alcohol. Relying on the rationale in *Birdwell*, the court determined that the conditions placed on the plaintiffs' on-call time were not so onerous as to mandate compensation. 870 F. Supp. at 1583.

In *Arrignton*, the court applied *Skidmore* and *Birdwell* and held that police officers were not entitled to compensation for on-call time. The officers were on-call twenty-four

hours a day, seven days a week, on all hours they were not on duty, and were required to be readily accessible at all times. Also, they had to notify dispatchers of their whereabouts and respond to a call within thirty minutes. 986 F. Supp. 1474.

While none of these cases are identical to the instant case, they illustrate that courts have denied FLSA recovery to plaintiffs who were subject to more restrictions than Chapman. Chapman attempts to defeat summary judgment by pointing out disputed facts between his version of the on-call restrictions and Defendant's version. However, if the Court accepts Chapman's version of events, Chapman still does not avoid summary judgment.

Chapman testified during his deposition that while he was on-call he could eat dinner at home, watch tv, "mill around the house," and go to sleep. Although Chapman may have chosen to remain at home during this time, there is nothing in the record to suggest that Defendant <u>required</u> Chapman to stay at home. And the fact that Chapman could not use the service van for personal use, although inconvenient, is not dispositive in light of the cases discussed above. Also, in light of the cases discussed above, the Court concludes that Defendant's policy that Chapman must respond to a service call within ten minutes and be within fifteen minutes of his service van was not so onerous as to require compensation. The record reflects that Chapman had the ability to change out his on-call time with other plumbers. The record also reflects that the service calls were limited in number. And, in contrast to many of the cases discussed above, Chapman was scheduled to be on-call only one day a week and, at most, one full weekend a month.

Accordingly, the Court concludes that Defendant is entitled to summary judgment, as a matter of law, on the issue of "on-call" time. The Court holds that the time Chapman spent on-call when he was not responding to a service call is not compensable.

### B. <u>Other Wait Time</u>

Chapman claims that he is entitled to compensation for the "wait time" he spent in the service van beginning at 7:30 a.m. As set forth above, the issue of wait time turns on whether "the time is spent predominately for the employer's benefit or for the employee's." *Armour,* 323 U.S. at 126; *Skidmore,* 323 U.S. at 136. As explained in further detail in 29 C.F.R. § 790.7:

> Waiting before the time established for the commencement of work would be regarded as a preliminary activity when the employee voluntarily arrives at his place of employment earlier than he is either required or expected to arrive. Where, however, an employee is required by his employer to report at a particular hour at his workbench or other place where he performs his principal activity, if the employee is there at that hour ready and willing to work but for some reason beyond his control there is no work for him to perform until some time has elapsed, waiting for work would be an integral part of the employee's principal activities. The difference in the two situations is that in the second the employee was engaged to wait while in the first the employee waited to be engaged.

Chapman testified during his deposition that he was entitled to be paid whenever he was in the company service van and that he was required to be sitting in his service van, ready to respond to a service call, at 7:30 a.m. Consistent with this view, Chapman began making notations in his DDRs, indicating that his working time began at 7:30 a.m. During this time, Chapman would sit in his service van, every morning at 7:30 a.m., waiting to receive the call or text from the dispatcher. The affidavit of Therien, a former plumber at

Grable, stated that when he was employed at Grable, he was required to wait in his service van at 7:30 a.m.

Defendant disputes this issue. According to Bill Grable, it would be ridiculous to have a policy that required the plumbers to sit in their service vans every morning at 7:30 a.m., waiting to receive a call from the dispatcher. Grable's service manager, Tom Buckmyer, also testified that Chapman was consistently told that he should not be waiting in his service van at 7:30 a.m.

Given this clear disputed issue, the Court cannot grant Defendant's summary judgment motion that the "wait time" Chapman spent in his service van every morning was not compensable. While Chapman's version of this policy may defy common sense, as Defendant states in its motion, the Court must interpret the facts and all reasonable inferences in a light most favorable to Chapman. Accordingly, this issue is for the jury to decide and will clearly turn on the parties' credibility. Thus, summary judgment on this issue must be denied.

**C.     Travel from Home to First Job and from Last Job to Home**

Chapman claims he is entitled to be compensated for the time he spent traveling from his home to his first service call, and for the time he spent traveling from his last service call to his home.

The Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts certain activities from compensation under the FLSA. The following activities are exempted:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

Also, the word "travel," as used in the Act is defined in 29 C.F.R. §785.35 as follows:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel, which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not work time.

Here, there is nothing in the record that suggests that Chapman's travel time from his home to his first service call and from his last service call to his home was anything more than commuting time, which is not compensable. This is true despite the fact that Chapman was in an employee-provided vehicle. *See Burton v. Hillsborough County, Florida*, 181 Fed. Appx. 829 (11th Cir. 2006).

Accordingly, Defendant's summary judgment motion is granted on the issue of travel time from and to Chapman's home.

    **D.**    **Travel Between Job Sites**

Although not entirely clear, Chapman appears to allege that Defendant did not pay him for the time he traveled from plumbing job site to plumbing job site. There is no dispute

that this time is compensable. But, as Defendant points out, the record reflects that Defendant did account for this travel time. Chapman's DDRs and the payroll records reflect that Defendant included this time in Chapman's pay.

In his response, Chapman contends that there were mistakes in the payroll records and Defendant did not always calculate his time correctly. Defendant, anticipating this argument, states that when Chapman pointed out discrepancies between his pay and the DDRs, (during his employment), Defendant corrected the mistakes and reimbursed him. Thus, this issue really turns on whether Chapman is entitled to unpaid wages due to payroll errors.

The Court denies summary judgment solely on the issue of payroll errors because of the parties' genuine dispute related to whether Chapman was <u>fully</u> compensated for the time he spent between job sites.[3] If he has not already done so, Chapman shall provide Defendant his calculation of the time he contends was omitted from his pay and all supporting documentation of same within twenty (20) days of this Order.

Defendant's motion for summary judgment is granted to the extent that Chapman was alleging that Defendant failed to include Chapman's travel time between job sites in his overall pay.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 28) is hereby granted in part and denied in part.

---

[3] The Court submits that, rather than waste the jury's time with payroll issues, it would behoove the parties to work together to resolve these issues.

2. The Clerk is directed to enter final summary judgment in favor of Defendant on Count III (retaliation) of Plaintiff's complaint.

3. Summary judgment is also granted in Defendant's favor on the issues of on-call time and travel time as set forth herein.

**DONE** and **ORDERED** in Tampa, Florida on August 1, 2011.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2010\10-cv-1202.msj28.frm